UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 4:20-cv-10076-JLK/BECERRA

KEY WEST BAR PILOTS ASSOCIATION,

    Plaintiff,

v.

R. JOYCE GRIFFIN, in her official capacity as
SUPERVISOR OF ELECTIONS FOR MONROE
COUNTY, FLORIDA; the CITY OF KEY WEST,
FLORIDA, a municipal corporation of the State of
Florida; and KEY WEST COMMITTEE FOR SAFER,
CLEANER SHIPS, INC., a Florida non-profit
corporation,

    Defendants.
_____/

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE
KEY WEST COMMITTEE'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Peter W. Homer, Esq. | Matthew P. Farmer, Esq. |
| HOMER BONNER JACOBS & ORTIZ, P.A. | FARMER & FITZGERALD, P.A. |
| Fla. Bar No. 291250 | Fla. Bar No. 0793469 |
| 1441 Brickell Avenue | 400 N. Tampa St., Suite 2840 |
| 1200 Four Seasons Tower Suite | Tampa, FL  33602 |
| Miami, FL  33131 | (813) 228-0095 |
| (305) 350-5100 | fax (813) 224-0269 |
| fax (305) 372-2738 | MattFarmer1@aol.com |
| phomer@homerbonner.com | |

Counsel for Defendant Key West
Committee for Safer, Cleaner Ships, Inc.

Plaintiffs brought this action in federal court seeking pre-election invalidation of three (3) Key West citizen ballot Initiatives. Those citizen Initiatives seek to invoke the City of Key West's 10th Amendment police power to protect the adequacy of its easily overwhelmed health infrastructure, and the health, safety and well-being of its citizenry. Plaintiffs failed, however, to appreciate that federal courts are courts of limited jurisdiction, able to exercise power only "in the last resort, and as a necessity." *Allen v. Wright*, 468 U.S. 737, 752 (1984). As a consequence of Article III's constitutional boundaries, federal courts are required to rigorously self-examine their jurisdiction, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006), which includes assessing standing of *each* plaintiff on *each* asserted claim; addressing only disputes "ripe" for decision; avoiding advisory opinions; abstaining from unnecessarily deciding federal constitutional issues; and declining to exercise supplemental jurisdiction where appropriate under 28 U.S.C. §1367.

These constitutional and prudential limitations on federal court power are why federal courts rarely if ever grant pre-election declaratory or injunctive relief challenging the constitutionality of proposed legislation or voter initiatives or referendums.[1] It also explains why in their opposition (the "Opposition") to the Committee's motion for summary judgment, Plaintiffs do not cite a single federal court decision granting pre-election declaratory relief disallowing a

---

[1] *See, e.g., United States v. Then*, 56 F.3d 464, 466 (2d Cir. 1995) ("Just as we ordinarily do not issue advisory opinions, we should not suggest to Congress that it ought to adopt proposed legislation. Our role is limited to interpreting and applying the laws that Congress passes[.]"); *Ajax Gaming Ventures, LLC v. Brown*, No. 06-cv-336 S, 2006 WL 2302192, at *2-3 (D.R.I. Aug. 8, 2006) (declining to pass on legality of proposed legislation where "the electorate may vote it down in November"); *Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1404 n.6 (S.D. Tex. 1995) ("[F]ederal courts may not advise . . . on the constitutionality of proposed legislation."); *Jones v. Deutsch*, 715 F. Supp. 1237 (SDNY 1989) (holding that until local incorporation petition was certified, and voter approval also obtained, plaintiffs' claims of threatened harm were not ripe and too imaginary to support Article III standing).

1

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

voter-sponsored initiative or referendum on constitutional grounds. That is because federal courts generally stay their hand; avoid premature adjudications on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985); allow voters to vote; and depending on the outcome, then and only then engage in post-election assessment of the voter approved ballot initiative.[2]

Florida state circuit courts, in contrast to federal courts, do not operate under the robust limitations Article III imposes on federal court jurisdiction. Plaintiffs know this. The Florida Supreme Court recognized this fundamental jurisdictional difference over a quarter century ago:

> Unlike the federal courts, Florida's circuit courts are tribunals of plenary jurisdiction. Art. V, § 5, Fla. Const. They have authority over any matter not expressly denied them by the constitution or applicable statutes. Accordingly, the doctrine of standing certainly exists in Florida, but not in the rigid sense employed in the federal system. We thus are not persuaded by the federal standing cases cited by the State.

*Department of Revenue v. Kuhnlein*, 646 So.2d 717, 720 (Fla. 1994).

Florida is not alone in this distinction, evidenced by opinions[3] from courts of numerous sister states holding that state court jurisdiction is not subject to the rigors of Article III.

---

[2] *Jones*, 715 F. Supp. at 1242-48 ("should the incorporation petition be certified" and if "voter approval be obtained" then a "party with standing may seek at that time to enjoin … and, if that party can meet the requirements for an injunction, prevent whatever imminent harm is threatened.")

[3] *See, e,g., Sekura v. Krishna Schaumburg Tan, Inc.,* 115 N.E.3d 1080, 1097 n.8 (Ill. App. Ct. 2018) ("when reading a federal decision, we must keep in mind the differences, such as that federal courts are subject to article III in the federal constitution, while [Illinois] state courts are not"); *Weatherford v. City of San Rafael*, 395 P.3d 274, 278 (Cal. 2017) ("Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine."); *Weld v. Glaxo Wellcome Inc.,* 746 N.E.2d 522, 529 (Mass. 2001) ("State courts, however, are not burdened by the[] [federal court's] jurisdictional concerns and, consequently, may determine, particularly when class actions are involved, that concerns other than standing in its most technical sense may take precedence").

2

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Conveniently ignoring this crucial difference (and failing to discharge their required duty of candor to this Court), Plaintiffs devote nearly a page and a half of their Opposition to a block quotation from a Florida 3rd DCA opinion, and a lengthy string citation of other Florida state appellate court opinions[4], deciding the pre-election legality of a voter initiative or referendum. ECF No. 52 at 5-6. None of the cited cases was issued by a federal court. The explanation why is straight-forward—federal courts of limited jurisdiction do not decide cases where, as here, the plaintiff lacks required standing, the dispute is not ripe for adjudication or calls for an advisory opinion, or federal constitutional issues can be avoided by abstention. Each of these factors, as well as the fact that all cruise ship operations into Key West have been suspended until at least October 31, 2020, foreclose Plaintiffs' request for federal court relief before the November 3rd election.

> **I.    Plaintiffs concede they seek a constitutionally improper advisory opinion and premature adjudication of a matter not "ripe" for decision.**

Plaintiffs' Opposition does not even address, and their non-response therefore concedes, that this case seeks a constitutionally disfavored advisory opinion and the requested declaratory and injunctive relief is not "ripe" for decision. As the Committee's motion for summary judgment demonstrated, Plaintiffs seek a "premature adjudication" before the November 3rd election even takes place, which constitutionally should be avoided. The request for declaratory and injunctive relief also threatens to entangle this Court "in abstract [constitutional] disagreements," and Plaintiffs can demonstrate no "hardship" if the Court withholds consideration, if any, until the

---

[4] One of the state court cases cited by Plaintiffs actually ruled that,"*[i]n their discretion*, …, the courts may make an initial determination as to whether or not the substantive provisions of the proposed amendments, are facially constitutional and are within the powers of the enacting body." *Gaines v. City of Orlando*, 450 So.2d 1174, 1178 (Fla. 5th DCA 1984) (emphasis added). Many of Plaintiffs' other cited state court cases merely authorize pre-ballot challenges to procedural deficiencies. *See, e.g., City of Miami Beach v. Herman*, 346 So.2d 122, 123 (Fla. 3d DCA 1977). There is no asserted procedural deficiency or challenge made by Plaintiffs here.

3

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

November 3rd election actually takes place. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). The undisputed fact that all cruise line operations into Key West have been suspended until <u>at least</u> October 31, 2020—a mere three (3) days before the November 3, 2020 election—further emphasizes that Plaintiffs will suffer no hardship from awaiting the outcome of the ballot Initiatives. This conceded lack of ripeness and the advisory opinion nature of the requested declaratory relief, without more, warrants summary judgment in favor of the Committee. Plaintiffs will not be prejudiced by such a result. If some or all of the Initiatives receive Key West voter approval and become effective, and if enforcement efforts were imminent or occurring, a court of appropriate jurisdiction could then, upon a proper showing by a constitutionally aggrieved party with standing, stay any enforcement efforts pending a determination on the merits.

**II.     Neither Plaintiff has made the required individualized showing of standing to assert each separate asserted claim for relief.**

Each Plaintiff bears an individualized burden of demonstrating its standing to assert each separate asserted claim for relief. That burden must be met with factual support not, as Plaintiffs attempted to do, a page of general legal principles from appellate cases, mere reliance on its pleadings, and a conclusory statement that Plaintiffs have met their burden. Having failed to <u>individually</u> meet that burden with respect to <u>each</u> asserted claim for relief, all of Plaintiffs' claims should be dismissed for lack of standing.

**III.     Prudential reasons warrant this Court's non-involvement at this juncture.**

There are variants of abstention. Here, however, abstention is proper under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941) because there are i) issues of unsettled state law (in Counts III and IV); ii) the determination of which may avoid the necessity to decide the federal constitutional issues (in Counts I and II). Plaintiffs do not, because they cannot, dispute that if they

were ultimately able to succeed on the unsettled state law claims in Counts III and IV, there would be no need for this Court to decide Plaintiffs' federal constitutional claims in Counts I and II. In these circumstances, under *Pullman*, the correct response is to abstain.

Even if the Court was disinclined to abstain, the Committee's summary judgment motion also demonstrated there is no independent jurisdictional basis for Counts III and IV and why the Court should employ its discretion not to exercise supplemental jurisdiction under 28 U.S.C. §1367(c)(3). As subsections (c)(1) and (c)(2) of §1367 respectively indicate, supplemental jurisdiction should be exercised sparingly where as in Count III a "novel or complex issue of State law" is involved or where as in Count IV the Florida law claim "predominates over" the asserted federal claims. The Opposition does not respond in any meaningful way to this supplemental jurisdiction argument; therefore, Plaintiffs should be deemed to have conceded the argument.

### IV. Plaintiffs have not demonstrated exigencies or undue hardships warranting an expedited disposition of this case.

The U.S. Supreme Court has repeatedly described questions of Article III justiciability as a "threshold" issue, s*ee, e.g., Va. House of Delegates v. Bethune-Hill,* 139 S. Ct. 1945, 1951 (2019); *Horne v. Flores,* 557 U.S. 433, 445 (2009). It is an "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560, that can be raised at any time, even on appeal for the first time. *See Frank v. Gaos*, 139 S. Ct. 1041 (2019). Plaintiffs, in superficial fashion, try to skip over this "threshold" issue, arguing that "resolving disputes such as this, pre-ballot printing, and pre-election, is the preferred course in a democracy." ECF No. 52 at 8. But as demonstrated above, when it comes to <u>federal</u> (as opposed to state) courts, Plaintiffs cite no support for that bold (and incorrect) statement. Indeed, a careful review of <u>federal</u> court decisions reveals just the opposite. Sensitive to concerns about justiciability and separation of powers (in an Initiative, voters are after all acting

in a legislative capacity), and careful to avoid advisory opinions and unnecessary constitutional decisions, federal courts generally stay their hand, avoid premature adjudications, allow voting to go forward which (to use Plaintiffs' chosen words) "is the [true] preferred course in a democracy," and then and only then decide whether a voter initiative or referendum is constitutionally or statutorily flawed.

To persuade the Court that it should proceed in hyper-speed fashion, Plaintiffs try to create some appearance of urgency. But they cannot demonstrate any exigencies to justify a hurried summary judgment decision or an August 12, 2020 trial on the merits. The election will not take place until November 3, 2020—almost three (3) months from now. Cruise ship operations in the U.S. and specifically into Key West ceased in mid-March and have been continuously suspended until "at least October 31, 2020" because of the COVID-19 pandemic. And that suspension will in all likelihood be further extended. Even if that suspension is lifted on October 31, 2020, it is unclear which cruise lines will survive the economic chaos caused by the COVID-19 pandemic; when surviving cruise lines will resume operations; whether surviving cruise lines will re-commence service into Key West; and what will be the frequency and magnitude of that service, if any.

Nor is there any remaining concern about the Supervisor of Elections incurring some additional cost if the three (3) Initiatives (which will be at the end of the ballot) cause the length of the November 3rd ballot to extend to an additional page. The Committee has reached an agreement to post a $10,000 bond with the Supervisor of Elections to cover that cost if an Initiative that caused the additional page length to the ballot is subsequently determined to be unenforceable. Thus, the reason the Court cited for expedited treatment of this matter has been rendered moot.

Having no meaningful response to the Committee's demonstration that there are no exigent circumstances warranting an expedited disposition of this case, Plaintiffs resort to hyperbole and denigrating voter intelligence. Plaintiffs claim that voters will be "delude[d] and deceive[d]" if the Initiatives are included on the ballot, that voters will "be misled into thinking that their votes are meaningful," and that "[p]rinting a ballot that deceives voters, creates a loss in trust in government." ECF No. 52 at 7.

Those concerns are ones that Plaintiffs, if they choose, can make without any meaningful hardship in opposing the Initiatives by traditional political means. The only "hardships" Plaintiffs are enduring are the costs incurred in opposing the Initiatives politically and as parties in this judicial proceeding. "These are the normal costs we as a society are prepared to recognize as a consequence of the democratic and statutory processes implicated here; they are not the kind of 'hardships' that would militate in favor of court intervention in what is an otherwise premature action." *Jones*, 715 F. Supp. at 1245. Key West's population is slightly over 24,000 and the number of registered voters is only approximately 15,000. Plaintiffs and other businesses or individuals with concerns about the economic impact of the Initiatives will undoubtedly politically campaign on those economic issues, as well as the constitutional and statutory issues that are the very subject of this lawsuit. This is after all a contested election, and as the court in *Jones* observed:

> As New Yorkers should well know in light of Governor Thomas Dewey's "upset loss" in the 1948 presidential election, *no vote is certain*. We think *voters can comprehend constitutional arguments made in the context of a referendum campaign*, and preempting voters from making an electoral judgment on that score is a course to be traversed most warily it seems to us.

715 F. Supp. at 1245 n.14 (emphasis added).

**V.    That there is no factual dispute material to the disposition of the Committee's jurisdictionally-specific summary judgment motion does not equate to no material factual disputes on the supposed merits of Plaintiffs' claims.**

Two additional aspects of Plaintiffs' Opposition require brief discussion.

First, in its moving papers, the Committee was clear that there is no genuine dispute as to the salient facts material to the disposition of its summary judgment motion. However, that motion does not seek a disposition of Plaintiff's claims on their merits (or the lack thereof). Rather, that motion sought summary judgment on jurisdictional grounds that do not require an examination of every fact material to a disposition of Plaintiffs' claims on their supposed merits.

Plaintiffs, in an attempted sleight of hand, twice say in their Opposition (ECF No. 52 at 6 and 7) that the Committee concedes there is no genuine or disputed factual issues at all. That is a misrepresentation. The Committee agrees there are no salient facts in dispute material to the disposition of the Committee's jurisdictionally based motion for summary judgment. However, as will be shown in opposition to Plaintiffs' recently filed motion for summary judgment which seeks a substantive decision on Plaintiffs' federal and state constitutional and statutory claims (ECF Nos. 40 and 41), there are numerous facts genuinely in dispute that are material to the disposition of Plaintiffs' substantive summary judgment motion. The Court should not be misled by Plaintiffs' conflation of that important distinction.

Second, Plaintiffs challenge the Committee's entitlement to a jury trial. Plaintiffs are wrong. Because of page constraints applicable to this reply memorandum, the jury issue will have to be separately fleshed out in more detail. For now, though, the Committee notes that Rule 57, Fed. R. Civ. P., explicitly contemplates a jury in a declaratory judgment action. It states in pertinent part that "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C.

§ 2201. Rules 38 and 39 govern a demand for a jury trial." And the Committee believes that *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) is dispositive, and each of the cases cited by Plaintiffs is distinguishable.

## CONCLUSION

The Committee's motion for summary judgment is predicated on four (4) independent but interrelated bases. If the Court agrees with any one, Plaintiffs' Complaint must be dismissed. Plaintiffs themselves created the grounds for dismissal. In an apparent rush to get into federal court and prevent Key West citizenry from voting on the Initiatives, Plaintiffs either minimized or ignored their burden of demonstrating a justiciable controversy sufficient to satisfy the requirements of Article III. Instead, they prematurely initiated litigation in this Article III court of limited jurisdiction—without the requisite standing over a dispute not yet "ripe" for decision, and sought relief amounting to a constitutionally disfavored advisory opinion. And they now try to sidestep the other substantial, prudential reasons that warrant this Court's abstention or discretionary non-exercise of supplemental jurisdiction.

Plaintiffs' opposition to the Committee's summary judgment motion is not only superficial and lacks meaningful analysis; it is demonstrably wrong as an undisputed matter of fact and law. The Committee appreciates the Court's attention to this dispute but mere interesting issues -- even those wrapped in a constitutional cloak -- do not, for the reasons described herein, satisfy the justiciability requirements of Article III. Summary judgment dismissing the claims against the Committee is therefore warranted as an undisputed matter of both fact and law.

Dated: August 10, 2020

Respectfully submitted,

/s/ Peter W. Homer
Peter W. Homer, Esq.
HOMER BONNER JACOBS & ORTIZ, P.A.
Fla. Bar No. 291250
1441 Brickell Avenue
1200 Four Seasons Tower Suite
Miami, FL  33131
(305) 350-5100
fax (305) 372-2738
phomer@homerbonner.com

/s/ Matthew Farmer
Matthew P. Farmer, Esq.
FARMER & FITZGERALD, P.A.
Fla. Bar No. 0793469
400 N. Tampa St., Suite 2840
Tampa, FL  33602
(813) 228-0095
fax (813) 224-0269
MattFarmer1@aol.com
Counsel for Defendant Key West
Committee for Safer, Cleaner Ships, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2020, a true and correct copy of the foregoing REPLY MEMORANDUM IN FURTHER SUPPORT OF THE KEY WEST COMMITTEE'S MOTION FOR SUMMARY JUDGMENT was filed electronically via the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Bart Smith, Esq.
Bart@SmithHawks.com

Christopher Deem, Esq.
Chris@SmithHawks.com

Ashley Sybesma, Esq.
Ashley@SmithHawks.com

Nicola Pappas, Esq.
Nikki@SmithHawks.com

Robert Shillinger, Esq.
Shillinger-Bob@monroecounty-fl.gov

Peter Morris, Esq.
Morris-Peter@monroecounty-fl.gov

Patricia Eables, Esq.
Eables-Patricia@monroecounty-fl.gov

Charles Jonathan Benner, Esq.
jbenner@thompsoncoburn.com

Bruce Rogow, Esq.
brogow@rogowlaw.com

Tara Campion, Esq.
tcampion@rogowlaw.com

Shawn Smith, Esq.
sdsmith@cityofkeywest-fl.gov

By: /s/ Peter W. Homer